United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CV 12-02703 JSW |
| Plaintiff, | **REPORT AND RECOMMENDATION RE PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |
| v. | |
| (1) APPROXIMATELY $35,040 IN UNITED STATES CURRENCY, and (2) APPROXIMATELY $36,085 IN UNITED STATES CURRENCY, | |
| Defendants. | |
| _____/ | |

Plaintiff United States of America ("Plaintiff") moves pursuant to Federal Rule of Civil Procedure 55(b) and Admiralty Local Rule 6-2 for default judgment regarding (1) approximately $35,040 in U.S. currency seized from Hemiar Hidais and (2) approximately $36,085 in U.S. currency seized from Ahmed Almontaser. Having considered the papers as well as relevant authority, the court recommends that Plaintiff's motion be granted.

## I. BACKGROUND & PROCEDURAL HISTORY

On December 21, 2011, the Drug Enforcement Agency ("DEA") received information from a confidential source that Hemiar Hidais was flying from John F. Kennedy Airport in New York to San Francisco International Airport ("SFO") with a large amount of U.S. currency. Compl. ¶ 7. Federal agents discovered $35,040 in cash in the luggage belonging to Hidais and $36,085 in cash in

**United States District Court**
For the Northern District of California

the luggage of Hidais' companion, Ahmed Almontaser.[1]  *Id.* at ¶¶ 15, 16, 32-34.  The agents advised the Claimants that the currency would be seized for further investigation based on the "suspicious circumstances."[2]  *Id.* at ¶¶ 23, 44.  Less than one hour later, DEA agents used a drug detection canine to conduct a search of the area around the baggage carousel where the currency had been placed by another DEA agent.  *Id.* at ¶¶ 24, 45.  The canine alerted to the odor of narcotics at the location where the currency had been placed.  *Id.*  Based on these circumstances, the currency was seized as possible proceeds of narcotic transactions or monies used in furtherance of drug trafficking under 21 U.S.C. § 881(a)(6).  *Id.* at ¶¶ 25, 50.

The DEA mailed each Claimant a notice of seizure on January 25, 2012.  [Docket No. 15 at 10; Docket No. 18 at 10.]  On February 22, 2012, Almontaser filed an administrative claim with the DEA Asset Forfeiture Section, asserting ownership of the currency.  [Docket No. 15 at 10.]  On February 28, 2012, Hidais mailed his administrative claim to the DEA Asset Forfeiture Section, which the DEA received on February 29, 2012.[3]  [Docket No. 23 at 3.]

On May 25, 2012, Plaintiff filed its complaint for Forfeiture.  This date was 86 days after Plaintiff received Hidais's administrative claim and 93 days after it received Almontaser's.

---

[1] Hidais and Almontaser are collectively referred to as "Claimants."

[2] The circumstances included Claimants' changing stories and inability to explain the nature of their business in San Francisco.  For example, Hidais told one agent that he was in California for a possible real estate venture, but he could not answer further questions about the venture.  Compl. ¶ 12.  Hidais also initially told the DEA agent that he was not traveling with Almontaser and a second companion with whom he had been seen exiting the plane.  *Id.* at ¶ 18.  When told that he had been seen traveling with Almontaser and the second companion, he admitted that he knew them but maintained that he was not traveling with them.  *Id.* at ¶ 19.  He later admitted to traveling with them.  *Id.* at ¶ 20.  He was also unable to explain why he did not book a return flight.  *Id.*  Similarly, when questioned about the currency he was carrying, Almontaser indicated that he intended to use the money to purchase cash machines in San Francisco; however, when asked why he was paying with cash as opposed to check or cashier's check and why it was necessary to purchase the machines in San Francisco, Almontaser could not provide an explanation.  *Id.* at ¶ 38.  Almontaser could not provide a logical answer as to why he was carrying a large amount of currency to the San Francisco area.  *Id.* at ¶ 43.

[3] There was some factual dispute as to whether Hidais's administrative claim was received on February 22, 2012 or February 29, 2012.  As explained further below, this case originally appeared in this case and filed a motion to dismiss.  Hidais's and Almontaser's claims subsequently were stricken by the Hon. Jeffrey S. White.  In its opposition to the motion to dismiss, Plaintiff provided FedEx records indicating that the claim was mailed on February 28 and received on February 29.  [Docket 23, Exs. A, C.]  In this motion for default judgment, the allegations in the complaint are deemed admitted by virtue of the defendants' default.  *See Fair Housing of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002).

Complaint for Forfeiture ("complaint") [Docket No. 1]. *See also* Docket No. 23 at 3. A warrant for the arrest and seizure of the property *in rem* issued on May 25, 2012. [Docket No. 3.] On June 1, 2012, Plaintiff served Claimants the forfeiture complaint and notice of forfeiture action. [Docket No. 4.] On June 3, 2012, Plaintiff published notice of the action on the government forfeiture website, and the posting remained on the website until July 2, 2012. [Docket No. 6.] Any claims were due by July 6, 2012. [Docket No. 4.] Hidais and Almontaser filed claims on July 24, 2012, eighteen days after the deadline. [Docket Nos. 12, 16.] Claimants simultaneously filed motions to dismiss, claiming that Plaintiff filed its complaint outside of the statute of limitations. [Docket No. 13, 17.]

On August 8, 2012, Plaintiff filed a Motion to Strike Claimants' claims for untimeliness. [Docket No. 22.] Plaintiff filed a second Motion to Strike for Claimants' failure to respond to special interrogatories. [Docket No. 24.] On October 1, 2012, the court ordered Claimants to show cause why their claims should not be stricken for either (1) untimeliness or (2) failure to respond to Plaintiff's special interrogatories. [Docket No. 25 at 2.] Claimants were admonished that failure to respond to the order to show cause by October 12, 2012 would result in the court granting Plaintiff's motion to strike. *Id.* After Claimants failed to respond, the court discharged its previous order and granted Plaintiff's motion to strike the claims on January 4, 2013. [Docket No. 26.]

On January 8, 2013, Plaintiff requested an entry of default with the intent of moving for a default judgment pursuant to Federal Rule of Civil Procedure 55(b) and Admiralty Local Rules 6-1 and 6-2. The clerk entered the default on January 8, 2013. [Docket No. 28.] Plaintiff served Claimants the notice of the entry of default on January 9, 2013. [Docket No. 29.] Plaintiff filed this Motion for Default Judgment on January 15, 2013. [Docket No. 30.]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing *Draper v. Coombs*, 792 F.2d

1   915, 924-25 (9th Cir. 1986)) ("A defendant's default does not automatically entitle the plaintiff to a

2   court-ordered judgment."); *Shanghai Automation Instrument Co.*, 194 F. Supp. 2d at 999.

3          The following factors ("the *Eitel* factors") may determine whether the court should grant a

4   default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
> substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at
> stake in the action[,] (5) the possibility of a dispute concerning material facts[,]
> (6) whether the default was due to excusable neglect, and (7) the strong policy
> underlying the Federal Rules of Civil Procedure favoring decision on the merits.

8   *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the

9   well-pleaded allegations of the complaint relating to a defendant's liability are taken as true."

10  *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-

11  18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the

12  pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d

13  1261, 1267 (9th Cir. 1992). The fourth factor focuses on the amount at issue in the action, as courts

14  should be hesitant to enter default judgments in matters involving large sums of money. "When the

15  money at stake in the litigation is substantial or unreasonable, default judgment is discouraged." *Bd.*

16  *of Trs. v. Core Concrete Constr., Inc.*, No. C 11-2532 LB, 2012 WL 380304, at *4 (N.D. Cal. Jan.

17  17, 2012) (citing *Eitel*, 782 F.2d at 1472). However, when "the sum of money at stake is tailored to

18  the specific misconduct of the defendant, default judgment may be appropriate." *Id.* (citations

19  omitted).

## III. DISCUSSION

21  **A. Statute of Limitations**

22         In their motions to dismiss, Claimants had argued that Plaintiff filed the Complaint for

23  Forfeiture after the 90 day statute of limitations. [Docket Nos. 15, 18.] Title 18 U.S.C. Section 983

24  requires the government to file a complaint for forfeiture "[n]ot later than 90 days after a[n

25  administrative] claim has been filed," except where the district court extends the filing period upon a

26  showing of good cause. 18 U.S.C. § 983(a)(3)(A). If the government does not file a complaint for

27  forfeiture within 90 days, "the Government shall promptly release the property pursuant to

28  regulations promulgated by the Attorney General, and may not take any further action to effect the

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  civil forfeiture of such property in connection with the underlying offense."  18 U.S.C. §

2  983(a)(3)(B).  It appears that Plaintiff's complaint was timely with respect to Hidais's administrative

3  claim.  However, Plaintiff does not dispute that it filed the complaint more than 90 days after

4  receiving Almontaser's administrative claim.

5  　　　　The threshold question is whether this court should consider the statute of limitations issue

6  sua sponte, since the Claimants' claims have been stricken and their motions to dismiss have been

7  terminated.  Compliance with the 90 day filing requirement under 18 U.S.C. § 983(a) is not a

8  condition of this court's subject matter jurisdiction.  *U.S. v. Wilson*, 699 F.3d 789, 797 (4th Cir.

9  2012) (extensively discussing rationale for determination that "the 90-day deadline imposed in §

10  983(a)(3) is not jurisdictional").  Thus, this court is not obligated to consider it under Federal Rule

11  of Civil Procedure 12(b)(h)(3), which requires the court to dismiss an action if it determines at any

12  time that it lacks subject matter jurisdiction.  Rather, the court has discretion to consider the statute

13  of limitations issue.  *See, e.g.*, *Taiwan Civil Rights Litigation Organization v. Kuomintang Business*

14  *Management Committee*, 486 Fed. Appx. 671, 671-72 (9th Cir. 2012) ("[T]he district court did not

15  err by addressing the statute of limitations issue sua sponte in ruling on plaintiffs' motion for default

16  judgment."); *Eitel*, 782 F.2d at 1471-72 (requiring district courts in addressing a motion for default

17  judgment to evaluate the "sufficiency of the complaint").

18  　　　　Claimants had the opportunity to put the statute of limitations defense before the court, but

19  abandoned that opportunity by failing to prosecute their claims.  This court therefore declines to

20  consider the statute of limitations issue sua sponte.  *See, e.g. Wilson* (holding, where claimant raised

21  argument that government had not met 90-day filing deadline under § 983(a)(3) for the first time in a

22  post-judgment motion, that claimant forfeited his limitations argument by not raising it during

23  forfeiture proceedings.)

24  **B.**　　**_Eitel_ Factors**

25  　　　　The discretionary *Eitel* factors favor granting the Plaintiff's motion for default judgment.

26  　　　　First, Plaintiff would be prejudiced by a denial of its motion, since it would have to spend

27  additional effort litigating an action in which the only potential claimants have failed to prosecute

28  this action.

United States District Court
For the Northern District of California

The second and third *Eitel* factors concern the merits of Plaintiff's substantive claim and the sufficiency of the complaint.  Plaintiff alleged claims under 21 U.S.C. § 881(a)(6), which provides for forfeiture of certain drug-involved property:

> [a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this chapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this chapter [are subject to forfeiture to the United States].

The complaint alleges that Claimants' purported legitimate sources of income were insufficient to explain the large sums of cash that they had in their luggage when they arrived at SFO.  Compl. ¶¶ 17, 40.  Traveling with large sums of cash is "strong evidence" of a drug-related transaction.  *United States v. $22,474.00 in U.S. Currency*, 246 F.3d 1212, 1217 (9th Cir. 2001) (citation omitted).  As discussed above, the court finds that Claimants have forfeited their statute of limitations defense.  The complaint has thus sufficiently alleged that Defendants currency were "possible proceeds of narcotic transactions or monies used in the furtherance of narcotic trafficking under 21 U.S.C. § 881(a)(6)" and therefore subject to judicial forfeiture.  Compl. ¶¶ 25, 50, 53.

Fourth, Defendants currency is not so great a sum of money as to warrant denying Plaintiff's motion for default judgment.  *See, e.g., United States v. $57,890 in U.S. Currency*, No. C 10-01829 WHA, 2010 WL 3987397, at *4 (N.D. Cal. Oct. 12, 2010) (finding $57,890 seized in connection with marijuana grow houses not substantial enough to warrant denial of motion for default judgment); *United States v. Approximately $72,000 in U.S. Currency*, No. C 08-1305 JCS, 2009 WL 506866 (N.D. Cal. Feb. 27, 2009) (finding approximately $72,000 seized by postal inspectors after a narcotics dog alert not so large a sum as to warrant denial of motion for default judgment).

The fifth *Eitel* factors concerns the possibility of a dispute concerning material facts.  Such a dispute is unlikely, given that Claimants had notice of the Complaint for Forfeiture and made some efforts to claim the sums at issue, but had their claims stricken by the court after abandoning those efforts.  No other parties have made any claim to the monies.

Sixth, there is no evidence that the Claimants' default is due to excusable neglect.  As described above, Claimants had several opportunities to prosecute this case, including after Judge

**United States District Court**
For the Northern District of California

1  White admonished Claimants for their failure to respond to Plaintiff's motions and discovery

2  requests.  Claimants did not respond.  *See United States v. $86,496.00 in U.S. Currency*, No. CV-07-

3  1693-PHX-DGC, 2008 WL 2687141 at *3 (D. Ariz. July 2, 2008) (finding no excusable neglect in

4  claimant's failing claim a month late, where there was direct notice of forfeiture complaint).

5  Finally, although merits-based decisions are preferred, it is not practical where, as here,

6  Claimants failed to engage reliably in the adjudication of the forfeiture action by not participating in

7  this case.  *See $57,890*, 2010 WL 3987397, at *4 (noting where no claimant has appeared to oppose

8  action, "reaching a decision on the merits is an impractical if not impossible task").

9

10  **IV. CONCLUSION**

11  For the foregoing reasons, the court recommends that the District Court grant Plaintiff's

12  Motion for Default Judgment against Defendants.  The court further recommends that the District

13  Court condemn and cause to be forfeited to the United States currency in the amounts of $35,040

14  and $36,085 pursuant to 21 U.S.C. § 881 (a)(6).  The court finally recommends the District Court

15  vest all rights, title and interest in said currency in the United States of America.

16  Any party may file objections to this report and recommendation with the district judge

17  within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D.

18  Civ. L.R. 72–2.

19

20  IT IS SO ORDERED.

21

22  Dated: April 22, 2013

23  _____

24  DONNA M. RYU
    United States Magistrate Judge

25

26

27

28